JOSEPH OGDEN et al., complainants-respondents,

*v.*

DELAWARE RIVER AND ATLANTIC RAILROAD COMPANY, defendant-respondent, and WALTER N. BOYER et al., claimants-appellants.

[Argued March 18th, 1912.   Decided June 20th, 1912.]

1. Section 87 of the General Railroad law (*P. L. 1903 p. 690,* as amended, *P. L. 1908 p. 119*) treats the money deposited with the state treasurer at the time of filing the certificate of organization as the moneys of the corporation, and the receiver of an insolvent corporation, to whom such money is paid upon the order of the chancellor, must distribute it, after payment of the expenses of the receiver, to such creditors or stockholders as may by law be entitled to receive the same.

2. Parties who, at a time when all real stockholders of a railroad corporation were personally acting, at the request of such stockholders and promoters, advanced for the company the deposit of $2,000 per mile of the proposed line, as then required by section 46 of the General Railroad law (*Gen. Stat. p. 2649*), upon an agreement for repayment out of sales of stock, and that stock equal · at par to the amount advanced should be deposited with a trust company as collateral security, which agreement was never carried out, will be deemed, as against the objection of those claiming under such consenting stockholders, as stockholders *pro hac vice, i. e.,* as entitled to protection as such on the basis of their having full paid stock to the amount of their cash payment, in the distribution of the fund by the receiver pursuant to section 87 of the General Railroad law (*P. L. 1903 p. 690,* as amended, *P. L. 1908 p. 119*).

3. Equity looks upon that as done which ought to be done.

4. Stockholders of an insolvent railroad corporation who procured stock from the company for which they paid nothing are not entitled to any part of the fund deposited with the state treasurer as required by section 46 of the General Railroad law (*Gen. Stat. p. 2649*) on the distribution thereof by a receiver pursuant to section 87 of the General Railroad law (*P. L. 1908 p. 119*) when such fund is insufficient to pay in full those who in equity hold full paid stock, and of which equity they knew and were instrumental in creating.

5. Whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding.

6. Stockholders of an insolvent railroad corporation who knowingly procured stock from the company by paying only a part of its par value, are not entitled to more than they paid, with interest, out of the fund deposited with the state treasurer as required by section 46 of the General Railroad law (*Gen. Stat. p. 2649*) on the distribution thereof by a receiver pursuant to section 87 of the General Railroad law (*P. L. 1908 p. 119*) when such fund is insufficient to pay in full those who in equity hold full paid stock.

On appeals from an order of the court of chancery advised by Vice-Chancellor (now Chancellor) Walker.

*Mr. Lewis Starr* and *Mr. D. Stewart Robinson* (of the Pennsylvania bar), for the appellants Walter N. Boyer, Zaccur P. Boyer, Jr., and Charles P. Reilly & Company.

*Mr. John G. Horner* and *Mr. Edwin L. Kalish,* and *Mr. Theron Davis* (of the New York bar), for the appellant Charles G. Braxmar.

*Messrs. Berry & Riggins* and *Mr. L. Stauffer Oliver, Mr. A. S. Weill* and *Mr. Jos. DeF. Junkin* (of the Pennsylvania bar), for the appellant John R. Yorks.

*Messrs. Berry & Riggins* and *Mr. L. Stauffer Oliver* and *Mr. A. S. Weill* (of the Pennsylvania bar), for the appellant John B. Grier.

*Mr. Norman Grey* and *Messrs. Ehrlich & Archbald* and *Mr. Lester B. Johnson* (of the Pennsylvania bar), for respondents Gustavus A. Muller and Anna W. S. Keator, assignee of Virtue C. Sweatman.

*Messrs. Bleakly & Stockwell,* for the respondent Henry J. West, trustee for William J. Thompson.

The opinion of the court was delivered by

TRENCHARD, J.

These are six appeals from the decree of the court of chancery confirming the report and adjudication of William S. Casselman,

receiver of the Delaware River and Atlantic Railroad Company, an insolvent corporation, upon claims filed. The court of chancery adopted the receiver's findings of fact, and the decree follows the report.

· The certificate of incorporation of the railroad company was filed July 11th, 1899, and on the same day there was deposited with the state treasurer $104,000, being $2,000 per mile of the proposed line, as then required by section 46 of the General Railroad law. *Gen. Stat. p. 2649.* The company became insolvent, and this fund was finally paid over to the receiver pursuant to section 87 of the General Railroad law (*P. L. 1903 p. 690,* as amended, *P. L. 1908 p. 119*), who disposed of it according to his report as follows: *First,* to the satisfaction in full of the claims of *bona fide* creditors; *secondly,* to the repayment to certain stockholders the amounts actually paid by them for the stock; and *thirdly,* the residue to Muller, Thompson and Sweatman (or their respective representatives), who advanced the money to the railroad company to enable it to make such deposit to the state treasurer.

As this latter award is the most important on these appeals, and is challenged by all the appellants, we will consider it first.

The claim of these persons, or their representatives, are in a broad sense based upon the fact that, at a time when all real stockholders of the corporation were personally acting, and at the request of the promoters and stockholders, they advanced for the company this fund so deposited, upon an agreement for repayment out of sales of stock, and that stock equal at par to the $104,000 should be deposited with a trust company as collateral security, which agreement was never carried out. The case shows that Zaccur P. Boyer, Walter N. Boyer and Zaccur P. Boyer, Jr., conceived and promoted the scheme of building this railroad from Gloucester to Atlantic City, and being unable to raise money for that purpose by ordinary stock subscriptions organized a construction company, which in effect became the subscriber for substantially the whole amount of one hundred and twenty thousand shares of the capital stock of the railroad company, although the certificate of incorporation indicates that there were other stockholders. To the certificate of incorpora-

tion there was attached an affidavit of the three Boyers, Henry Pennington and Frederick Nicholson, that they were directors of the railroad company; that $104,000 of the stock had been in good faith subscribed and paid for in cash to the directors of the association, and that the amount subscribed and paid was at least $2,000 for every mile proposed to be made.

·On June 26th, 1899, the construction company entered into a written agreement with Muller. This agreement recites that the construction company had made a contract with the railroad company to construct its railroad, and that under the laws of the state it was requisite that there be deposited with the treasurer of the state the sum of $2,000 a mile, and that the construction company had applied to Muller to advance to and for the use of the railroad company for deposit the sum of $104,000. It then declares that it is agreed that, if Muller should deposit the money to the credit of the railroad company, then within four months there should be paid to Muller the money advanced or deposited by him. This contract also contained a covenant by the railroad company which was that if the construction company failed to make the arrangement and refund the money to· Muller that it, the railroad company, would execute all papers necessary to enable Muller to have returned to him from the state treasurer such part thereof as the railroad company would be entitled to under the laws of the state. The railroad company further agreed that one hundred and eight thousand shares of the one hundred and twenty thousand shares issued, or to be issued, should be issued to the Security Trust and Safe Deposit Company for the use and benefit of Muller, to continue until the amount of money subscribed and paid for the said stock shall equal the amount of money advanced by Muller and until it be paid to him. This we take it must mean that this stock was to be deposited with the security trust company and as sold the proceeds applied to discharging the money advanced by Muller. This agreement was signed by Muller, the railroad company and the construction company. It does not appear that the stock was ever deposited, but the agreement is useful as indicating the intention of the parties concerning the fund in question.

On June 30th, 1899, and before the articles of association were filed, the railroad company made an agreement with the construction company for the building of the railroad for which it was to be paid the whole of the capital stock of the railroad company. That agreement to build was never carried out. The contract of the construction company and the railroad company with Muller, though executed before the company was incorporated, binds the company, because the record shows that it was ratified by the railroad company after its organization. It further appears in this record that Muller did not alone advance the money, but that he procured Thompson and Sweatman to join with him, and they are of course entitled to the equal benefit of any equities which flow to Muller.

We are of opinion that the award to Muller, Thompson and Sweatman was proper.

The fund of $104,000 came into the hands of the receiver of the insolvent railroad company, and not in due course as an ordinary asset, but by force of section 87 of the General Railroad law. *P. L. 1903 p. 690,* as amended, *P. L. 1908 p. 119.* This statute has two material features—*first,* it treats the money deposited with the state treasurer at the time of filing the certificate of organization as the *moneys of the corporation;* and *second,* the receiver of an insolvent corporation to whom such money is paid upon the order of the chancellor, must *distribute it,* after payment of the expenses of the receiver, *to such creditors or stockholders as may by law be entitled to receive the same.*

All arguments based on the proposition that this fund is not, in any sense, the money of the corporation, can avail the appellants nothing, because if it is not, the receiver can make no effective order. His special jurisdiction depends upon the facts that the fund he is to distribute is the money of the corporation.

Treating it as such, the receiver directed certain payments out of the fund to certain *bona fide* creditors and stockholders. These payments are not now challenged, excepting that some of the stockholders, hereafter more particularly referred to, who were awarded only the amount they paid the corporation for it, with interest, now contend that the par value thereof should have been paid to them.

After these payments, the residue, about $70,000, was awarded to Muller, Thompson and Sweatman, and we think that this action was justified upon the theory that they were, in equity, stockholders, and were thus entitled to such residue.

In equity; they were stockholders within the amendment of the General Railroad law under which the receiver was acting.

We have pointed out that, at a time when all the real stockholders of the corporation were personally acting, it was agreed that stock equal at par to the $104,000 advanced should be deposited with a trust company as collateral security for Muller, Thompson and Sweatman in consideration of their depositing the $104,000 with the state treasurer for the corporation.

In view of the maxim that "Equity looks upon that as done which ought to be done," as against the objection of those claiming under such consenting stockholders, Muller, Thompson and Sweatman are to be deemed as stockholders *pro hac vice, i. e.,* as entitled to protection as such in the distribution of the fund created on the basis of their having full paid stock to the full amount of their cash payment for the benefit of the corporation to enable it to contract for construction of its road.

This conclusion practically disposes of the most important questions raised upon all the appeals.

The appellants Walter N. Boyer and Zaccus P. Boyer, Jr., appeal from so much of the decree as disallows their respective claims as stockholders.

But it plainly appeared that they paid nothing for their stock, and they are not entitled to any part of the fund which, as we have seen, is insufficient to pay in full those who in equity held full paid stock, and of which equity the Boyers knew and were instrumental in creating.

The appellant Zaccus P. Boyer, Jr., also appeals from so much of the decree as disallows his claim for salary. But this claim appears to have no basis in fact.

The appellants Charles G. Braxmar and Charles P. Reilly & Company appeal from so much of the decree as disallows their claims as creditors of the Boyers who had assigned to them stock, standing in the name of the Boyers, as collateral security.

We have seen that had this stock been in the hands of the

Boyers it could not, under the circumstances, share in the distribution, because nothing was paid for it. And we are of opinion that in the hands of these pledgees its rights rise no higher under the circumstances of this case. The evidence strongly indicates that it was taken with actual knowledge of the situation. But if that be not so, clearly the surrounding circumstances put these pledgees on inquiry. And whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. *Gale* v. *Morris, 30 N. J. Eq. (3 Stew.) 285.* It follows that constructive notice is imputed to these pledgees.

The appellants John R. Yorks and John B. Grier appeal from so much of the decree as allows to them only the amount of money they paid to the company for their stock, with interest.

These appellants are *bona fide* stockholders. They purchased from the company knowing that they paid therefor only thirty-three and one-third per cent. of the par value thereof. They were allowed the amount that they paid, with interest, and in our opinion have no cause for complaint under the circumstances disclosed by the record.

The decree of the court of chancery will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY—15.

*For reversal*—None.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY—15.

*For reversal*—None.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY —15.

*For reversal*—None.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY —15.

*For reversal*—None.